# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

ROGER ZEHREN, )
)
       Plaintiff, )
)
v. ) Case. No. 12-CV-689-TCK-FHM
)
THOMAS ENERGY SYSTEMS, INC., )
)
       Defendant. )

## OPINION AND ORDER

Before the Court is Defendant's Motion for Summary Judgment and Brief in Support filed on August 27, 2014 (Doc. 38). Defendant Thomas Energy Systems, Inc. ("Defendant") seeks summary judgment on all claims asserted against it by Plaintiff Roger Zehren ("Plaintiff"). For the reasons explained below, Defendant's motion is granted in part and denied in part.

### I. Factual Background

The following facts are either undisputed or viewed in a light most favorable to Plaintiff. Defendant distributes, fabricates, and services environmental and vapor emission products, gas and air compression products, and pneumatic products. Defendant manufactures its own products and acts as a distributor for products made by third-party manufacturers. Until the summer of 2011, Defendant had both an inside and an outside sales department. Employees in the inside sales department primarily handled phone, fax, and email orders from customers. The outside salesmen were assigned to a geographical area and certain accounts. Outside salesmen were expected to "bring in new customers, meet with existing customers a minimum of three times per year, maintain the customer's business and promote TESCORP's products." (Def.'s Mot. for Summ. J. 2.)

Defendant hired Plaintiff as a salesman in 1991. Throughout his career, Plaintiff worked primarily as an outside salesman. Plaintiff has a degree in biology, not engineering, so all

calculations for engineered systems sold by Plaintiff were reviewed by Vince Thomas, who was Defendant's owner, president, and engineer. During Plaintiff's employment, Defendant was an authorized service center for FLSmidth aka Fuller ("Fuller"). Beginning in 2006, Plaintiff began selling Fuller pumps on Defendant's behalf. Defendant contends that at some point Fuller developed concerns about Plaintiff's assignment to its account. Plaintiff's supervisors kept him on the Fuller account despite the alleged concerns. In April 2011, Fuller removed the states of Michigan and Ohio from Defendant's sales territory and gave them to another company. Defendant continued to represent Fuller in the remaining states within its territory and Plaintiff continued to be the salesman on the Fuller account.

In May 2011, Defendant removed Plaintiff from the Fuller account. Defendant claimed Fuller "demanded" that Defendant remove Plaintiff from its account. According to Defendant, its contract with Fuller required Defendant to abide by Fuller's wishes with regard to who serviced its account. Thomas Streck, a Fuller representative, testified that he was not sure whether Fuller had the authority under the contract to dictate who serviced its accounts. Defendant allowed Plaintiff to keep his other sales accounts; however, commissions from the Fuller account comprised 40-50% of Plaintiff's commissions.

On May 15, 2011, Defendant hired Justin Little upon his graduation from college with a degree in mechanical engineering. According to Defendant, Little was hired to fill a new engineer position, whereby he would evaluate engineered systems – sometimes in conjunction with Thomas – rather than to sell any non-manufactured products.

Employees in Defendant's sales department took turns responding to after-hours calls from customers. On June 10, 2011, Plaintiff refused to be on-call for after-hours calls, even though he

2

had previously performed such duties. According to Plaintiff, he refused to handle after-hours calls related to the Fuller account, since that account had been removed from him. Although the parties disagree as to how it happened, Plaintiff was terminated after he refused to be on call.

On December 6, 2012, Plaintiff filed a Petition in the District Court of Tulsa County, Oklahoma, alleging claims for violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634, and intentional infliction of emotional distress ("IIED").

## II. Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id*. However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

## III. ADEA Claim

Plaintiff asserts Defendant violated the ADEA by discriminating against him because of his age when it terminated him and replaced him with a younger employee. Under the ADEA, it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because

of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA requires "but-for" causation, meaning "to succeed on a claim of age discrimination, a plaintiff must prove by a preponderance of the evidence that her employer would not have taken the challenged action but for the plaintiff's age." *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1277 (10th Cir. 2010). A plaintiff may meet this burden using either direct or circumstantial evidence. *Id.*; *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). Where, as here, a plaintiff relies on circumstantial evidence, the Plaintiff must satisfy the burden-shifting framework of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).[1]

The *McDonnell Douglas* framework requires a plaintiff to first make a prima facie case of discrimination under the ADEA. If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* "If the defendant does so, the plaintiff must either show that his . . . age . . . was a determinative factor in the defendant's employment decision, or show that the defendant's explanation for its action was merely pretext." *Id.* (internal quotation marks omitted).

---

[1] Plaintiff has offered no direct evidence of age discrimination. Although Plaintiff references a birthday card in which he was called a "geezer," Plaintiff received that card from his coworkers in 1998, thirteen years before his termination. Because the card is too far removed in time from Plaintiff's termination, the Court has not considered the card for purposes of summary judgment.

### A. Plaintiff's Termination

#### 1. Prima Facie Case

In ADEA termination cases, a prima facie case of age discrimination requires the plaintiff to show that he was (1) within the protected class of individuals 40 or older; (2) performing satisfactory work; (3) terminated from employment; and (4) replaced by a younger person. *Id.* The parties do not dispute that Plaintiff can satisfy the first and third elements of the prima facie case. However, Defendant contends Plaintiff cannot establish that he was performing satisfactory work or that he was replaced by a younger person.

##### a. Satisfactory Work

It is undisputed that Plaintiff worked as a salesman for Defendant from 1991 until his discharge in 2011. There is some dispute as to the quality of Plaintiff's sales work on the Fuller accounts and whether his poor performance led to the removal of those accounts. However, it is undisputed that even after the removal of the Fuller accounts, Defendant continued to employ Plaintiff and permit him to keep his industrial air accounts. This fact alone suggests that – from Defendant's perspective – Plaintiff was still performing satisfactory work. Defendant also contends Plaintiff's work was unsatisfactory because he refused to fulfill his on-call responsibilities. Plaintiff contends he only refused to be on call for the Fuller accounts after he had already been removed from those accounts.

The evidence offered by Plaintiff regarding his performance is sufficient to withstand this aspect of Defendant's motion for summary judgment. The Tenth Circuit has held that "a plaintiff may make out a prima facie case of discrimination in a discharge case by credible evidence that she continued to possess the objective qualifications she held when she was hired or by her own

5

testimony that her work was satisfactory, even when disputed by her employer, or by evidence that she held her position for a significant period of time." *Bolton v. Sprint/United Mgmt. Co.*, 220 F. App'x 761, 767 (10th Cir. 2007); *see also English v. Colo. Dep't of Corrections*, 248 F.3d 1002, 1008 (10th Cir. 2001) ("Although the district court noted some dispute over the quality of his work, it correctly found that the extensive period of time that English held his position at least entitles him to an inference of satisfactory performance sufficient to survive summary judgment."). Plaintiff's own testimony and the length of his employment suggest he was performing satisfactory work. Defendant has offered no evidence from the time of Plaintiff's employment, such as performance reviews, internal correspondence, etc., which suggests otherwise.

### b. Replaced by a Younger Person

Plaintiff alleges he was replaced by Little, while Defendant contends Plaintiff's position was eliminated upon his termination. It is clear that Little was not hired solely as a replacement for Plaintiff. As an engineer, Little had qualifications that Plaintiff did not have and assumed responsibilities different than those Plaintiff held as a salesman. However, the facts suggest that Little may have performed at least some of the responsibilities Plaintiff held at the time of his termination. (Dep. of Justin Little, Ex. 5 to Pl.'s Resp. to Def.'s Mot. for Summ. J., 43:1-44:24) ("At this particular time, the only reason that I'm doing these is just because the person that would have been doing it had quit and left."). Little also advertised four Atlas Copco air compressors for sale on his LinkedIn account.

Construing the disputed facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has established this element of the prima facie case for purposes of summary judgment. The evidence suggesting that Little performed at least some of the tasks assigned to Plaintiff prior

6

to his termination is sufficient to raise an inference that Plaintiff was replaced by a younger person. *See Bedell v. Am. Yearbook Co., Inc.*, 17 F. Supp. 1227, 1232 (D. Kan. 1998) (finding that plaintiff established prima facie case where evidence indicated a younger employee was trained to perform at least some of the responsibilities of terminated employee). Defendant contends that distributing the duties of a terminated employee among remaining employees does not constitute replacement. However, Little was hired almost contemporaneously with the removal of the Fuller accounts and only one month before Plaintiff's termination. Given these facts, the Court finds the cases cited by Defendant involving reduction in force to be unpersuasive.

### 2. Legitimate, Non-Discriminatory Reason

Under *McDonnell Douglas*, the burden now shifts to Defendant to articulate a legitimate, non-discriminatory reason for Plaintiff's termination. Defendant contends Plaintiff was terminated for insubordination – specifically, Plaintiff's refusal to be on call after hours.

### 3. Pretext

Once an employer articulates a legitimate, non-discriminatory reason for the adverse employment action, the burden shifts back to Plaintiff to show that there is a genuine dispute about whether the explanation was pretext for discrimination. A plaintiff may show pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (internal quotation marks omitted). "The plaintiff does not have the burden of proving a defendant's proffered reasons were false, or that a discriminatory was the 'sole' motivating factor in the employment decision." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1146 (10th

7

Cir. 2008). If pretext is shown, the trier of fact can reasonably infer from the falsity of the explanation that the employer is covering up a discriminatory purpose. *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1168 (10th Cir. 2007) ("[O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.").

The Court concludes that Plaintiff has demonstrated sufficient pretext evidence to reach a jury on his age discrimination claim. Plaintiff has presented a question of fact as to whether he refused to perform all on-call duties or whether he refused to perform only those on-call duties related to the Fuller account, which Plaintiff no longer handled. Presumably, if Fuller was so unhappy with Plaintiff's performance on its account to warrant Plaintiff's removal from the account, Fuller would not want Plaintiff handling after-hours calls for its products either. Therefore, if Plaintiff's version of events is credited by a jury, that jury could also conclude that Defendant's proffered reason for termination was pretextual.

**IV. IIED Claim**

To succeed on an IIED claim, a plaintiff must ultimately prove: (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff to suffer emotional distress; and (4) the plaintiff's emotional distress was severe. *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1387 (10th Cir. 1991) (applying Oklahoma law). To satisfy the extreme and outrageous element, a plaintiff must prove the defendant's conduct was so extreme and outrageous as to be beyond all possible bounds of decency. *Eddy v. Brown*, 715 P.2d 74, 77 (Okla. 1986) ("Conduct which, though unreasonable, is neither beyond all possible bounds of decency in the setting in which it occurred, nor is one that can

be regarded as utterly intolerable in a civilized community, falls short of having actionable quality.") (internal quotations omitted). Oklahoma law directs the district court to act as a "gatekeeper" and make an initial determination about the outrageousness of the defendant's conduct before sending the claim to a jury. *Breeden v. League Servs. Corp.*, 575 P.2d 1374, 1377-78 (Okla. 1978) ("The court, in the first instance, must determine whether the defendant's conduct may reasonably be regarded so extreme and outrageous to permit recovery . . . .").

Defendant's conduct cannot possibly be deemed outrageous. Plaintiff has offered absolutely no evidence to suggest that any conduct by Defendant was extreme or outrageous and, in fact, declined to even respond to Defendant's motion for summary judgment on this claim. Defendant is entitled to summary judgment on Plaintiff's IIED claim.

## V.     Conclusion

Defendant's Motion for Summary Judgment and Brief in Support (Doc. 38) is GRANTED as to Plaintiff's claim for intentional infliction of emotional distress and DENIED as to Plaintiff's claim for age discrimination.

**IT IS SO ORDERED this 6th day of January, 2015.**

TERENCE C. KERN
United States District Judge